UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA<br><br>v.<br><br>BAHADIR YAHSI | Crim. Action No. 11-353 (JLL)<br><br>**OPINION AND ORDER** |
|---|---|

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant Bahadir Yahsi's ("Yahsi" or "Defendant")'s motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. For the reasons set forth below, Defendant's motion is denied.

**I.    BACKGROUND**

On January 23, 2012, a federal grand jury returned a five-count second superseding indictment (the "indictment") charging Yahsi with (1) conspiracy to distribute and to possess with intent to distribute oxycodone, a Schedule II controlled substance, and 3, 4-methylenedioxymethamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance; (2) distribution of oxycodone; (3) distribution of MDMA on August 15, 2010; (4) distribution of MDMA on August 19, 2010, and (5) distribution of MDMA on August 25, 2010.

A jury was empaneled on December 4, 2010; between December 4, 2010 and December 7, 2010, the Government presented its case-in-chief to the jury. Upon the conclusion of the Government's case-in-chief, the Defendant filed the instant motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29.

1

## II. LEGAL STANDARD

To prevail on a Rule 29 motion for judgment of acquittal, the defendant "bears the very heavy burden of showing that, viewing the evidence in the light most favorable to the Government, no rational trier of fact could find him guilty beyond a reasonable doubt." *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002). This Court must draw all reasonable inferences in favor of the Government in resolving Defendant's Rule 29 motion. *See id.*

## III. DISCUSSION

Yahsi argues that there is insufficient evidence to support a conviction on the "conspiracy to distribute" and the substantive distribution charges in the indictment because the evidence at trial shows that Yahsi was merely a broker (or middleman) on the acquisition-side of the drug transactions at issue in this case. Yahsi further argues that his Sixth Amendment confrontation rights have been violated because he did not have an opportunity to cross-examine the person who calibrated the equipment that DEA Chemist Brian Hall used to test the substances that Yahsi distributed to Mile Petkovski to determine whether they were, in fact, oxycodone and MDMA. The Court will address each of these arguments in turn.

### A. **Sufficiency of the Evidence**

Having thoroughly considered the parties' arguments and the case law, this Court rejects Yahsi's argument that he cannot be convicted either of conspiracy (Count 1 of the indictment) or distribution of, and possession with intent to distribute oxycodone and MDMA (Counts 2 through 5 of the indictment) merely because he was a middleman in the transactions.

The Court is not aware of, and Yahsi has failed to cite any authority to support the proposition that if the jury finds that Yahsi acted as a "broker" or "middleman" for the buyer (as opposed to the seller) in the drug transactions at issue, then the jury cannot convict Yahsi of

"conspiracy to distribute" or of any of the substantive distribution offenses. The overwhelming weight of the authority makes clear that, as a matter of law, the question as to whether Yahsi brokered the drug transactions on behalf of the buyer or the seller has no relevance to whether he conspired to distribute drugs, or distributed or possessed the drugs with the intent of distributing them. *See United States v. McCoy*, 86 F.3d 139 (8th Cir. 1996) (holding that defendant who brokered a drug deal between an undercover officer and seller could be convicted of conspiracy to distribute drugs without considering whether the defendant brokered the transaction on behalf of the buyer or the seller); *United States v. Rodriguez*, 765 F.2d 1546 (11th Cir. 1985) (defendant who agreed with a third-person to find a source of drugs for a confidential informant purchaser could be liable for conspiracy to distribute drugs notwithstanding the fact that the request to arrange the drug transaction came from the confidential informant); *United States v. Cathey*, No. 12-1760, 2012 U.S. App. LEXIS 21015 (7th Cir. Oct. 10, 2012) ("[W]hen a [drug transaction] broker aids the culpable parties on both sides of the transaction, his collaboration with either side is punishable as a conspiracy.").

Furthermore, with respect to the substantive distribution counts, the Third Circuit, as well as other Circuits, have adopted a broad interpretation of the term "distribute." As stated in *United States v. Pungitore*, 910 F.2d 1084, 1133 (3d Cir. 1990), "[c]ourts have broadly construed the term, "distribute," as encompassing any acts "perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." (citing decisions of the Eleventh, Fifth and Sixth Circuits).

With this legal framework in mind this Court finds that the evidence in this case, construed in the light most favorable to the Government, could reasonably support a conviction on the conspiracy and each of the distribution charges in the indictment.

### a. Count 1 - Conspiracy to Distribute Oxycodone and MDMA

With respect to Count 1, a reasonable jury could conclude from the testimony and tape recordings admitted into evidence during trial that Yahsi is guilty of conspiracy to distribute oxycodone and MDMA. The Court will cite three illustrative examples of evidence that may form the basis upon which a reasonable jury could conclude beyond a reasonable doubt that Yahsi conspired to distribute drugs:

(1) Conspiracy with Ilkay Gunar (also known as "Mikey")

Based on the following testimony of Mile Petkovski, a reasonable jury could conclude that Yahsi conspired with Ilkay Gunar (also known as "Mikey") to distribute oxycontin:

| | |
|---|---|
| QUESTION: | Now, you testified that Mikey took you to meet with the defendant. Is that correct? |
| PETKOVSKI: | Yes. |
| QUESTION: | Was that the first time you met with the defendant? |
| PETKOVSKI: | Yes. |
| QUESTION: | And what month and year did you first meet with the defendant? |
| PETKOVSKI: | I first met him towards the end of June or the end of June at 2010 at his auto body shop in Paterson. |
| QUESTION: | Was Mikey present when you first met the defendant? |
| PETKOVSKI: | Yes, he was present. |
| QUESTION: | What is your understanding of why Mikey was introducing you to the defendant. |
| PETKOVSKI: | To directly negotiate and discuss with him the buying of the drugs. |

| | |
|---|---|
| **QUESTION:** | Did you have discussions with Mikey and the defendant about drugs during the first meeting with the defendant present? |
| **PETKOVSKI:** | Yes. We did discuss drugs and other things as well. |
| **QUESTION:** | What type of drugs? |
| **PETKOVSKI:** | We discussed the Oxycontin, 30-milligram drug. |

(Petkovksky Tr 3.102-3.103.)

A reasonable jury might find that Petkovski's testimony suggesting a conspiracy between "Mikey," or Ilkay Gunar and Yahsi is corroborated by the following clip of the audio recording admitted into evidence as Exhibit 107 as reflected in demonstrative Exhibit 107A.

> **DEFENDANT:** Mikey's not gonna find you. What Mike gave you that time, I gave it to him, that samples. You know what I mean? And I told him I needed it for, I told your price. But he didn't tell me who it was for and I know it wasn't for him. (*See* Ex. 107A, clip 4, at 5.)

According to Petkovski's explanation of this audio clip, we could hear Yahsi confirm that he had given Mikey the oxycontin pills that Mikey, in turn, gave to Petkovski. (Tr. 3.134.)

(2) <u>Conspiracy with Ersin Eroglu to distribute Oxycontin</u>

Based on the testimony of Ersin Eroglu and the video recording admitted into evidence as Exhibit 106, a reasonable jury could conclude that Yahsi conspired with his drug supplier, Ersin Eroglu, to distribute 100 pills of oxycodone on September 30, 2012 to Mile Petkovski.

Eroglu testified that on September 30, 2010, he met with the Defendant and Mile Petkovski to carry out a transaction involving the sale of 100 oxycodone pills. Specifically, Eroglu testified that he gave the oxycontin pills "to Bahadir Yahsi, and then Miles turned around and handed [him] the money." (Tr. 5.133.) Eroglu further testified that he counted only $2,000

of the $3,000 he was supposed to receive for the oxycontin pills after Yahsi reassured him that the money was "straight," that is, that it was all there. (Tr. 5.133-5.134.)

A reasonable jury could find that Eroglu's testimony is corroborated by the video and audio recording admitted into evidence as Exhibit 106. This recording shows Yahsi, Eroglu, and Mile Petkovski present during the drug transaction. In Clip 5 of Exhibit 106, we could hear the following exchange:

| | |
|---|---|
| PETKOVSKI: | Okay, count the money and go. |
| EROGLU: | Okay |
| DEFENDANT: | Ersin, the money's straight my ["n" word] it's straight. |
| EROGLU: | Yea? |
| PETKOVSKI: | Don't worry. |
| DEFENDANT: | Yeah, it's straight, go ahead. |
| EROGLU: | Well I have to count it bro, I have to. |
| DEFENDANT: | No it's straight! I'm telling you it's straight! |
| PETKOVSKI: | Okay, we're counting, we're counting. Fast. |
| DEFENDANT: | Ersin you're my cousin for twenty years, but you don't ["F"ing] trust me? |
| ERSIN: | No, no, it's not my, my ["N" word]. |
| DEFENDANT: | I'm telling you straight, that's my man, dog. |
| ERSIN: | Alright dog, I'm not even going to count the other thousand. I trust you man. |

(Ex. 106A at 17-18.)

6

(3) <u>Conspiracy with suppliers to distribute MDMA</u>

At numerous points in the recordings admitted into evidence, Yahsi has made reference to his ecstasy suppliers. Based on these recordings, a reasonable jury could conclude that Yahsi conspired with his suppliers to distribute MDMA to Petkovski. By way of example, in the audio recording that has been admitted into evidence as Exhibit 103, we hear Yahsi tell Petkovski on August 19, 2010 that he will receive various MDMA samples from his supplier on the following day:

> **DEFENDANT:** Tomorrow he says he's got the, he's gonna have the red hearts and the, the lady Gs. The blue ones. So that's four different kinds. That out here. You got to let me know, you know. (Ex. 103A, Clip 1, at 2.)

### b. Counts 2-5 – Distribution of, and Possession with Intent to Distribute Oxycodone and MDMA

With respect to the substantive distribution charges, there is sufficient evidence from which a reasonable jury could conclude beyond a reasonable doubt that Yahsi distributed a supply of oxycodone pills to Mile Petkovski on September 30, 2010 as charged in Count 2, and distributed samples of MDMA to Petkovski on August 15, August 19, and August 25, 2010 as charged in Counts 3, 4 and 5, respectively.

Additionally, to the extent that a reasonable jury could find that Yahsi possessed the oxycodone and ecstasy drugs at issue in this case, this Court finds that a reasonable jury could also find that Yahsi possessed said drugs with the intent to distribute them. Based on the following excerpt of Petkovski's testimony, for instance, a reasonable jury may conclude beyond a reasonable doubt that Yahsi's intent in obtaining oxycodone and MDMA for Petkovski was so that Petkovski could, in turn, redistribute these drugs to his "cousin."

| | QUESTION: | Did you and the defendant have an understanding as to who would be buying these pills from you? |
| --- | --- | --- |
| | PETKOVSKI: | I always told him that my cousin would be buying the drugs from us. |
| | QUESTION: | So you and the defendant were going to sell these drugs to you said a cousin or – |
| | PETKOVSKI: | He thought the drug was going to my cousin, but as a matter of fact, the drugs went to FBI agents. |
| (Tr. 3.126). | | |

1. Count 2 (September 30, 2010 Oxycodone transaction)

Ersin Eroglu's testimony concerning the September 30, 2010 oxycodone transaction provides just one example of evidence from which a reasonable jury may conclude that the Government has satisfied its burden of proving beyond a reasonable doubt that Yahsi distributed oxycodone as charged in Count 2:

| QUESTION: | What did you do with the oxycodone pills at that point? |
| --- | --- |
| EROGLU: | I handed them over to Bahadir Yahsi, and then Miles turned around and handed me the money. |
| QUESTION: | Let's talk about you handing the pills to Bahadir Yahsi. Why did you hand the pills to Bahadir rather than the customer, Miles? |
| EROGLU: | As I said before I didn't know Miles. |
| QUESTION: | What did defendant Yahsi do with the bag containing the oxycodone pills, as best you could tell? |
| EROGLU: | He gave them to Mr. Miles. |

(Tr. 5.133.)

2. Count 3 (August 15, 2010 MDMA Transaction)

8

Based on the testimony of Mile Petkovski, a reasonable jury could conclude beyond a reasonable doubt that Yahsi distributed MDMA on August 15, 2010 as charged in Count 3 of the indictment. Specifically, according to Petkovski, August 15, 2010 was

> the first time that [he] got the first sample of the drug ecstasy. That is the drug called purple lips. And the defendant told [him] that in [their] next meeting he [Yahsi] would give [him] three other kinds of ecstasy drugs.

(Tr. 3.145).

### 3. Count 4 (August 19, 2010 MDMA Transaction)

Based on the testimony of Mile Petkovski and the audio recording admitted into evidence as Exhibit 103, a reasonable jury may conclude beyond a reasonable doubt that Yahsi distributed MDMA to Petkovski on August 19, 2010. Specifically, Petkovski testified that on August 19, 2010, he met Yahsi in Paterson where Yahsi gave him a drug sample "called Blue Star," which "is another kind of ecstasy drug." (Tr. 3.152). In Clip 1 of the audio recording admitted as Exhibit 103, we hear Yahsi tell Petkovski, "Listen, take these, the stars. Okay?" Petkovski explained that when Yahsi told him this, he was "handing [him] the Blue Star sample drug." (Tr. 3.152).

### 4. Count 5 (August 25, 2010 MDMA Transaction)

Based on the testimony of Mile Petkovski, a reasonable jury may conclude beyond a reasonable doubt that Yahsi distributed MDMA to Petkovski on Augsut 25, 2010. Specifically, Petkovski testified as follows, with respect to his August 25, 2010 meeting with Yahsi:

> When we meet, me and the defendant, he gave me samples of the drugs called Red Hearts. That is also a sample of the ecstasy drug. He gave me two pills.

(Tr. 3.156).

9

Indeed, as these examples illustrate, there is sufficient evidence from which a reasonable jury could convict Yahsi on all Counts of the indictment. Accordingly, to the extent that Defendant's Rule 29 motion is premised on the insufficiency of the evidence, Defendant's motion is denied.

### B. Defendant's Confrontation Clause Argument

In support of his argument that his Sixth Amendment confrontation rights have been violated, Defendant relies on the following Supreme Court cases: *Crawford v. Washington*, 541 U.S. 36 (2004), *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), and *United States v. Ramos-Gonazlez*, 664 F.3d 1 (1st Cir. 2011). Although not specifically cited by the Defendant, the Court has also considered the implications of the Supreme Court's holding in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).

Having thoroughly reviewed the three decisions Defendant cited—*Crawford*, *Bullcoming*, and *Ramos-Gonzalez*—as well as the Supreme Court's decision in *Melendez-Diaz*, this Court holds that Yahsi's Sixth Amendment confrontation rights have not been violated by the Government's failure to call as witnesses the individuals who calibrated the equipment that Mr. Hall used to test the substances about which he testified.

In *Crawford*, the Supreme Court held that a criminal defendant's Sixth Amendment confrontation rights are violated if testimonial statements of absent witnesses are admitted into evidence, unless it is established that the absent witness is unavailable "and the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. Statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial. *See id; see also Melendez-Diaz v. Massachussetts*, 557 U.S. at 311.

10

In *Bullcoming*, the Supreme Court overturned a defendant's conviction of driving while intoxicated. *Bullcoming*, 131 S. Ct. at 2710. Specifically, the Court applied *Crawford* in holding that prosecutors' failure to call the analyst who signed a lab report certifying that the defendant's blood alcohol content was above the legal limit violated the defendant's Sixth Amendment confrontation rights because the lab report amounted to testimonial evidence. *Bullcoming*, 131 S. Ct. at 2717. The Court noted that although another analyst who was familiar with the lab's testing procedures provided live testimony, such live testimony was insufficient to comply with the requirements of the Sixth Amendment because the prosecution failed to produce the live testimony of the actual analyst who prepared the report. *Id.*

In *Melendez-Diaz*, a defendant was charged with distributing and trafficking cocaine. The prosecution placed into evidence notarized analyst reports showing that the substance seized by the police was, in fact, cocaine, but did not present the live testimony of the analysts who authored the reports. *Melendez-Diaz*, 557 U.S. at 308. The Supreme Court held that the failure to present the analysts' live testimony violated the defendant's confrontation rights because the reports were testimonial, as they had been made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 311.

Finally, in *Ramos-Gonzalez* the First Circuit held that the Sixth Amendment confrontation right of a defendant accused of possessing with intent to distribute cocaine was violated when the district court allowed a forensic chemist to testify about the results of the drug analysis that he did not conduct. 664 F.3d at 6.

The instant case is distinguishable from the three cases cited by Defendant, and from *Melendez-Diaz*. The overarching principal in *Crawford* and its progeny is that a defendant's

11

confrontation rights are implicated only when out-of-court testimonial **statements** of a non-testifying declarant are admitted into evidence. Here, no statements of the individuals who calibrated the equipment used by Mr. Hall have been admitted into evidence. Furthermore, the calibration of the equipment that Mr. Hall used to test the drug samples admitted as Exhibits 300, 301, 302 and 303 is not a testimonial **statement**, but rather a routine act that, as Mr. Hall testified, is performed on a monthly basis. (Tr. 5.75). Unlike the defendants in *Bullcoming*, *Ramos-Gonzalez*, and *Melendez-Diaz*, Yahsi had the opportunity to confront and cross-examine the author of the lab reports in this case.

The Defendant is certainly free to advance the argument that the jury should question the reliability of Mr. Hall's tests on the grounds that Mr. Hall did not calibrate the equipment himself. The fact that the individuals who calibrated the equipment did not testify at trial, however, does not amount to a violation of Yahsi's Sxith Amendment rights.

### III.   CONCLUSION

In construing the evidence in the light most favorable to the Government, the Court finds that a rational jury could find Yahsi guilty of the charges in the indictment beyond a reasonable doubt. Accordingly,

**IT IS,** on this 10th day of December 2012

**ORDERED** that Yahsi's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is denied.

**SO ORDERED.**

Jose L. Linares
United States District Judge